UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ERIK EMERSON,

        Plaintiff,

v.

MEZZION INTERNATIONAL, LLC,
MEZZION PHARMACEUTICALS, INC. and
MEZZION PHARMA CO., LTD.

        Defendants.

Civil Action No.

## COMPLAINT AND JURY DEMAND

Plaintiff Erik Emerson ("**Emerson**" or "**Plaintiff**"), residing at 61397 Skene Trail, Bend, Oregon, by way of Complaint against Defendant Mezzion International, LLC ("**MIL**"), Defendant Mezzion Pharmaceuticals, Inc. ("**MPI**") and Defendant Mezzion Pharma Co. Ltd. ("**MPCL**"), alleges and says:

### JURISDICTION AND VENUE

1. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. 1332(a)(1) and/or (2) as Plaintiff is a citizen of a different state from Defendants, and/or MPCL is a citizen of a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is appropriate in this judicial district pursuant to 28 U.S.C. 1391(b)(1) and/or (3).

IDENTIFICATION OF THE PARTIES AND BACKGROUND

3. Emerson has been involved in the pharmaceutical ("pharma") industry for approximately eighteen (18) years, elevating to positions as high as Chief Executive Officer.

4. Emerson began his career in pharma at King Pharmaceuticals in sales and marketing. Thereafter, Emerson was the Director of Marketing at Gilead Sciences, was the Senior Director of Commercial Development for Xoma Corporation and, in or about February January 2017, was retained on a consulting basis by MIL as its Vice President of Sales and Marketing.

5. MIL is a Delaware limited liability company and MPI is a Delaware corporation.

6. MIL and MPI are wholly-owned subsidiaries of MPCL, an innovation-driven Korean pharma company that is focused on discovering, developing and commercializing novel therapeutics in the field of rare pediatric diseases. MPCL is a publicly-listed pharma company on the Korean Stock Exchange under 140410: KOSDAQ.

7. Dong Hyun Park ("Park") is a Manager in MIL, upon information and belief a Manager in MPI, and is the Chief Executive Officer of MPCL.

8. Emerson was induced to work for MIL and later MPI by Defendants, who promised Emerson that his compensation package would include what they hoped would be valuable MPCL stock options.

9. On or about October 1, 2017, MIL entered into a written employment agreement (the "**Employment Agreement**") with Emerson, a copy of which is annexed hereto and incorporated herein by reference as Exhibit "A".

10. Emerson was advised that the Employment Agreement was necessary in order for him to receive the options.

11. The Employment Agreement provides, inter alia, that Emerson was hired as a Director and to oversee the marketing of new drug products at the rate of $35,417 per month. Eventually, Emerson began working for MPI as a direct employee.

12. In connection with his entering into of the Employment Agreement, MIL's Board of Directors granted Emerson an option for 40,000 MPCL shares on November 16, 2017 at a strike price of $33,400 Korean Won ("**KRW**").

13. According to Article 7 of the written stock option agreement (the "**Option Agreement**") relating to the 40,000 shares, the option could be revoked by MPCL by resolution of the Board of Directors but only for certain enumerated occurrences set forth in the Option Agreement. A copy of the Option Agreement is annexed hereto and incorporated herein by reference as Exhibit "B".

14. While employed by MIL and/or MPI, and as part of his compensation package, Defendants promised additional options such that, on or about March 23, 2018, Emerson was granted an option for 30,000 MPCL shares at a strike price of $41,500 KRW, and on March 12, 2019 an option for 15,000 MPCL shares at a price of $100,900 KRW.

15. Each of Emerson's option grants are confirmed in an October 15, 2019 e-mail to him from Youn-Taek Song, IR Team/Director of MPCL ("Song"), a copy of which is annexed hereto and incorporated herein by reference as Exhibit "C".

16. Each of Emerson's stock option grants is exercisable after two years from the grant date and for eight years thereafter.

17. In or about October, 2019, about a month before the two year anniversary from the date of the first grant of options, Emerson notified Defendants that he wanted to exercise his option with regard to the 40,000 shares which were about to vest.

18. Thereafter, Defendants assisted Emerson with regard to opening an account at NH Investment & Securities Co., Ltd. ("**NHIS**") for that purpose, and the account was opened in or about mid-December.

19. On or about December 24, 2019, Emerson sent written notice that he wanted to exercise his option as to 5000 of his 40,000 shares and, on or about December 29th he sent written notice that he wanted to exercise the option as to all 40,000 shares.

20. Upon information and belief, Defendants were upset that Emerson wanted to exercise his initial option and, as a result, in or about late December Emerson was verbally told he was being terminated and his last day of employment would be on or about January 31, 2020.

21. At or about the time he learned of his termination, Emerson sought to have MIL and/or MPI transfer his remaining MPCL shares granted to him on March 23, 2018 and March 12, 2019, but MIL and MPI never transferred the shares into Emerson's account.

22. Despite repeated correspondence with Defendants, Emerson's shares were not transferred into his account at NHIS and Emerson was unable to sell those shares through no fault of his own.

23. MPCL's Chief Executive Officer Park communicated with Emerson via telegram app messenger on or about February 1, 2020 that the vested options were Emerson's to exercise but Defendants never transferred the shares to his account and never responded to further communications from or on behalf of Emerson.

24. In any event, Emerson's termination without cause was not the type of occurrence as defined in the Option Agreement which would have enabled MPCL to revoke the options he was granted and Defendants never suggested to Emerson that MIL or MPI had cause to terminate him.

25.     As a result of MIL and/or MPI lacking cause to terminate Emerson, under Korean law all of Emerson's unvested options accelerated and fully vested.

26.     Emerson also had communications with Peter Manso, Esq., MPI's general counsel located in Boca Raton, Florida, about Emerson's desire to exercise the options granted to him.

27.     Manso claimed he was working on it and informed Emerson that the final step in the process was with Park who controlled the release of the shares.

28.     By letter, dated March 19, 2020, counsel for Emerson wrote a letter to Manso to inquire about the status of the transaction, but received no response, and Emerson's counsel also received no response to subsequent communications to Manso.

29.     On or about April 13, 2020, Emerson wrote to Song, asking him to confirm receipt of his payment for Emerson to exercise 5000 and 10,000 options from his initial 40,000 shares.

30.     By e-mail, dated April 23, 2020, Song wrote to Emerson, indicating Song had heard that Emerson had transferred the money but informed Emerson that, due to Korea's Foreign Exchange Control Act, it might be impossible to send Emerson his money.

31.     Thereafter, Emerson sent $67,500 to exercise certain options and that amount was converted into KRW but, to Emerson's knowledge, none of his requests to exercise options were ever acted upon by Defendants and Emerson has not received any money related to the sale of any stock.

32.     In December, 2019, at a time when Emerson's account was open and he sought to exercise his option for 40,000 shares, the price per share of MPCL's stock on the Korean Stock Exchange was far in excess of Emerson's strike price and he would have earned profit of more than six million United States dollars (US$6 million) with regard to those shares.

33. As a result of Emerson's termination without cause, and under Korean law, the remaining unvested options accelerated, and MPCL should have transferred all of the shares from the later options to Emerson's account.

34. To date, Defendants have not enabled Emerson to exercise any of his options, resulting in substantial damages to him.

## CAUSES FOR ACTION

### FIRST COUNT
### (Breaches of Contract)

35. Emerson repeats and realleges all of his earlier allegations as if same were fully set forth herein at length.

36. Emerson and MIL entered into an Employment Agreement, and Emerson and MPCL entered into Option Agreement, pursuant to which Emerson was granted the right to exercise an option to purchase 40,000 shares of MPCL stock after a two-year vesting period.

37. Thereafter, MIL, MPI and/or MPCL and Emerson entered into Option Agreements, pursuant to which Emerson, as part of his compensation, was awarded options on March 23, 2018 and March 12, 2019.

38. After the two-year vesting period for the first award expired, Emerson exercised his option, but Defendants failed to transfer Emerson's vested shares into his account as he requested in writing, and Defendants ignored all of his subsequent requests.

39. At or about the time he learned of his termination, Emerson sought to have MIL and/or MPI transfer the remaining MPCL shares granted to him via options on March 23, 2018 and March 12, 2019, but MIL and/or MPI never transferred the MPCL shares into Emerson's account.

40. As a result of said Defendants' breaches of the Option Agreements, the Employment Agreement and/or the later employment agreements, Emerson has suffered substantial damages.

## SECOND COUNT
### (Anticipatory Breaches of Contract)

41. Emerson repeats and realleges all of his earlier allegations as if same were fully set forth herein at length.

42. Upon information and belief, Emerson and Defendants also entered into other written option agreements with regard to the remaining shares awarded to him.

43. Defendants' refusals to follow Emerson's instructions and/or refusals to respond to his requests to exercise all of his options, constitute, <u>inter alia</u>, anticipatory breaches of contract.

44. As a direct result thereof, Emerson has suffered, and will suffer, substantial damages.

## THIRD COUNT
### (**Fraudulent Inducement and Misrepresentation**))

45. Emerson repeats and realleges all of his earlier allegations as if same were fully set forth herein at length.

46. Defendants fraudulently induced Emerson to work for MIL and/or MPI based upon misrepresentations that he would receive and be entitled to exercise certain MPCL stock options upon the vesting of those options.

47. Defendants knew, or should have known, that the representations made to Emerson were false at the time they were made and that Emerson would rely upon those representations.

48. Emerson reasonably relied to his detriment upon said false representations when agreeing to work for MIL and/or MPI and when he continued to provide services to said Defendants.

49. As a direct and proximate result of Emerson's reasonable reliance on the misrepresentations made by said Defendants, he has suffered substantial damages.

50. The intentional and/or negligent misrepresentations made by said Defendants were willful, wanton, malicious and/or in reckless disregard of Emerson's rights.

## **PRAYER FOR RELIEF AS TO ALL COUNTS**

WHEREFORE, Plaintiff Erik Emerson demands judgment on the foregoing Counts in the Complaint against Defendants Mezzion International, LLC, Mezzion Pharmaceuticals, Inc. and Mezzion Pharma Co., Ltd., jointly, severally and/or in the alternative, as follows:

A. Declaratory and/or injunctive relief requiring Defendants to follow Plaintiff's instructions with regard to exercising his options;

B. Enjoining and restraining Defendants from issuing any additional stock options in MPCL shares or otherwise diluting Plaintiff's interest;

C. Punitive damages (on Count Three);

D. Damages;

E. Interest;

F. Costs of suit; and

G. Such further relief as this Court deems just and equitable under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

June 15, 2020

                        COOCH and TAYLOR, P.A.

                        By: /s/ *Carmella P. Keener*
                            Carmella P. Keener (No. 2810)
                            The Nemours Building
                            1007 North Orange Street, Suite 1120
                            P.O. Box 1680
                            Wilmington, DE  19899-1680
                            (302) 984-3816
                            ckeener@coochtaylor.com

                            Steven I. Adler, Esq.
                            MANDELBAUM SALSBURG, P.C.
                            3 Becker Farm Road
                            Roseland, NJ 07068
                            Ph.: 973-736-4600
                            Fax: 973-736-4670

                            *Attorneys for Plaintiff*