IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERIK EMERSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case 1:20-cv-00808-CFC |
| | * | |
| MEZZION INTERNATIONAL, LLC, | * | |
| MEZZION PHARMACEUTICALS, INC., | * | |
| and MEZZION PHARMA CO., LTD., | * | |
| | * | |
| Defendants. | * | |

**MEZZION PHARMACEUTICALS' MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Mezzion Pharmaceuticals, Inc. ("Mezzion Pharmaceuticals"), by its counsel, has moved to dismiss Erik Emerson's Complaint under Fed. R. Civ. P. 9(b) and 12(b)(6). This memorandum provides the grounds and authorities for that motion.

### I.  Introduction

Emerson is a former employee of Defendants Mezzion International, LLC ("Mezzion International"), and Mezzion Pharmaceuticals.[1] He does not allege that he was ever an employee of Mezzion Pharmaceuticals' corporate parent,

---

[1] Effective April 27, 2018, Mezzion International was converted into Mezzion Pharmaceuticals. By operation of law, Mezzion Pharmaceuticals is "deemed to be the same entity as" Mezzion International. 8 *Del. C*. § 265(f).

Defendant Mezzion Pharma Co. Ltd. ("MPCL").[2] Emerson nevertheless alleges that "Defendants" "promised" him MPCL stock options and have not honored his attempts to exercise those options. Emerson's Complaint is in three counts. Count One alleges that all three defendants failed to honor a contract under which Emerson could exercise an option for 40,000 shares of MPCL stock after two years of employment. Count Two alleges all three defendants' failure to honor similar, later-awarded option grants. Count Three alleges that all three defendants "fraudulently induced Emerson to work for MIL and/or MPI based upon misrepresentations that he would receive and be entitled to exercise certain MPCL stock options upon the vesting of those options." Compl. (ECF No. 1) at ¶ 46.[3]

The Complaint fails to state a claim upon which relief can be granted. Counts One and Two are barred by the statute of frauds. Count Three rests upon conclusory assertions rather than facts, and the Complaint demonstrates that Emerson cannot establish fraudulent intent. Accordingly, the Court should dismiss all three counts with prejudice.

## II. Relevant Allegations

---

[2] On information and belief, MPCL, a corporation organized under the laws of the Republic of Korea and based in the Republic of Korea, has not yet been served.

[3] "MIL" refers to Mezzion International and "MPI" to Mezzion Pharmaceuticals. Compl. at 1.

The Complaint alleges that, "[i]n or about February January 2017 [sic], [Emerson] was retained on a consulting basis by MIL as its Vice President of Sales and Marketing." *Id*. at ¶ 4. Emerson was allegedly "induced to work for MIL and later MPI by Defendants, who promised Emerson that his compensation package would include what they hoped would be valuable MPCL stock options." *Id*. at ¶ 8. The Complaint does not allege when this promise was made, who made it on behalf of "Defendants," how it was made, where it was made, whether it was made by or on behalf of one, some, or all three of the Defendants, or whether what was communicated to Emerson was something other than a promise that his compensation would include an unspecified quantity of what "they" hoped would be valuable MPCL stock options.

Emerson alleges that eight or nine months later – on or about October 1, 2017 – he and Mezzion International entered into an employment agreement, *id*. at ¶ 9, and that, "[e]ventually, Emerson began working for MPI as a direct employee," *id.* at ¶ 11. The Complaint does not allege difficulties in Emerson's relationship with Mezzion International or Mezzion Pharmaceuticals at any point up to and through his firing, effective January 31, 2020.

Exhibit A to the Complaint is alleged to be Emerson's employment agreement with Mezzion International. *Id*. at ¶ 9; *see* ECF No. 1-1 at 2-3 (Exhibit

A).[4] Exhibit A is not signed by anyone on behalf of Mezzion International. *See* ECF No. 1-1 at 3. Exhibit A says nothing about stock options. Emerson nevertheless alleges (in the passive voice) that he "was advised that the Employment Agreement was necessary in order for him to receive the options." Compl. at ¶ 10. Again, Emerson does not identify the alleged speaker or correspondent, let alone when, where, how, or why he "was advised" of this.

Exhibit B to the Complaint, which is also not signed, is Emerson's first alleged stock-option agreement with MPCL. *Id.* at ¶ 13; *see* ECF No. 1-1 at 5-6 (Exhibit B). Allegedly, "MIL's Board of Directors granted Emerson an option for 40,000 MPCL shares on November 16, 2017 …," Compl. at ¶ 12, and additional stock options on March 23, 2018, and March 12, 2019, *id.* at ¶ 14.[5] Exhibit B is the only alleged stock-option agreement that is an exhibit to the Complaint.

Emerson does not allege that he was ever an employee of MPCL. Exhibit B does not reference either Mezzion International or Mezzion Pharmaceuticals, and does not say that Emerson's employment or his having an employment agreement with either "was necessary in order for him to receive the options." Quite the

---

[4] ECF No. 1-1 contains Complaint Exhibits A-C, all of which the Complaint incorporates. *See* Compl. at ¶¶ 9, 13, 15. Page references to Exhibits A-C employ the pagination assigned upon CM/ECF filing. So, for instance "ECF No. 1-1 at 5" refers to Page 5 of 9.

[5] Exhibit B refers only to the board of directors of MPCL. *See* ECF No. 1-1 at 6 (Articles 7 & 8).

contrary, Exhibit B states that its purpose is "to compensate and motivate employees and officers of the Company [i.e., MPCL] *and outside managing/technical experts* who have contributed, or likely will contribute, to the Company's management operations." ECF No. 1-1 at 5 (emphasis added).

Even though Exhibit B is the only alleged stock-option agreement that is an exhibit, the Complaint is clear that none of the alleged stock-option agreements could be performed within one year. Exhibit B states that "[t]he date of the grant of the Stock Option ('Grant Date') shall be November,16, 2017 [sic]," and "[t]he exercise period of the Grantee's Stock Option shall be from November,17,2019 [sic] to November,16,2027 [sic] and the *Grantee shall be employed for at least two (2) consecutive years from the Grant Date*." *Id*. (emphasis added) And the Complaint affirmatively avers that "[*e*]*ach of Emerson's stock option grants is exercisable after two years from the grant date*." Compl. at ¶ 16 (emphasis added); *see id.* at ¶ 36 ("Emerson and MPCL entered into Option Agreement [sic], pursuant to which Emerson was granted the right to exercise an option to purchase 40,000 shares of MPCL stock after a two-year vesting period.").

According to the Complaint, shortly before the second anniversary of the first alleged award, Emerson notified the defendants that he wanted to exercise his first grant of options, and "*Defendants assisted Emerson* with regard to opening an account … for that purpose …." *Id*. at ¶¶ 17-19 (emphasis added). Emerson

5

nevertheless alleges that his later efforts to exercise stock options were unsuccessful. *Id*. at ¶ 34 ("To date, Defendants have not enabled Emerson to exercise any of his options …."). Emerson alleges, "[u]pon information and belief, [that] Defendants were upset that [he] wanted to exercise his initial option," and that "in or about late December" of 2019, he "was verbally told that he was being terminated," effective January 31, 2020. *Id*. at ¶ 20. Why they were upset, the Complaint does not say.

Counts One and Two allege breach of contract and anticipatory breaches of contract. Both concern oral stock-option agreements incapable of performance within one year.

Count Three alleges (in relevant part) that "Defendants fraudulently induced Emerson to work for MIL and/or MPI based upon misrepresentations that he would receive and be entitled to exercise certain MPCL stock options upon the vesting of those options." *Id*. at ¶ 46. The Complaint alleges no facts supporting the conclusory allegations that "Defendants knew, or should have known, that the representations made to Emerson were false at the time they were made and that Emerson would rely upon those representations," *id*. at ¶ 47, and "[t]he intentional and/or negligent misrepresentations made by said Defendants were willful, wanton, malicious and/or in reckless disregard of Emerson's rights," *id*. at ¶ 50.

## III. Argument

    A.    A complaint's allegations must be plausible to survive a motion to dismiss.

Rule 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint should be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Under this plausibility standard, a complaint must contain "'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Id*. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679.[6] Legal conclusions, labels, and generalizations are entitled to no judicial deference. *Twombly*, 550 U.S. at 555 (cleaned up) ("courts are not bound to accept as true a legal conclusion couched as a factual allegation"). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

> B. Counts One and Two, which concern stock options exercisable only after two continuous years of employment from the grant date, are barred by the statute of frauds.

Counts One and Two rely on alleged oral contracts incapable of performance within one year. These claims are unenforceable under the statute of frauds, 6 *Del. C*. § 2714, and are, therefore, subject to dismissal with prejudice.

In *Mosiman v. Madison Cos., LLC*, this Court was asked to enforce oral contracts with a term of three years related to the "Kaaboo Del Mar Music

---

[6] In addition to the allegations in the complaint, the court may also consider exhibits attached to the complaint, documents incorporated by reference, items subject to judicial notice, and matters of public record. *Mosiman v. Madison Cos., LLC*, 2019 U.S. Dist. LEXIS 7496, 2019 WL 203126, at *4 (D. Del. Jan. 15, 2019) (citations omitted) (Connolly, J.).

Festival." 2019 U.S. Dist. LEXIS 7496 at **2-3. The plaintiff had refused to sign a proposed writing memorializing an oral agreement for festival production because the contract's three-year term would have become three one-year terms. *Id.* at *2. The plaintiff had sent the defendants a second contract for ticketing services, which they never signed. *Id.* at *3. Because oral contracts that cannot be performed within one year are unenforceable under the statute of frauds, and the complaint's first two counts were based on three-year oral contracts, the Court held the claims barred by the statute of frauds and dismissed them with prejudice. *Id.* at *5-6 (citing 6 *Del. C.* § 2714; *Olson v. Halvorsen*, 982 A.2d 286, 291 (Del. Ch. 2008) (holding that an unsigned agreement providing for a multi-year payout was unenforceable under the statute of frauds)).[7]

Emerson bases Counts One and Two on an unsigned "stock option agreement" (Exhibit B, ECF No. 1-1 at 5-6) and similar alleged agreements. The Complaint and Exhibit B are clear that "[e]ach of Emerson's stock option grants is exercisable after two years from the grant date." Compl. at ¶ 16; *see id*. at ¶ 36 ("Emerson and MPCL entered into Option Agreement, pursuant to which Emerson was granted the right to exercise an option to purchase 40,000 shares of MPCL

---

[7] Because "Delaware law is clear that the part performance doctrine does not apply to oral contracts not to be performed within one-year," this Court rejected the plaintiff's attempt to argue part performance as an exception to the statute of frauds. *Id*., 2019 U.S. Dist. LEXIS 7496, 2019 WL 203126, at *6 (citing *Olson*, 982 A.2d at 295).

stock after a two-year vesting period."). Thus, because Emerson alleges that he could not exercise any of the alleged stock-option grants until after two years of his continuous employment from the relevant alleged grant date, the unsigned contracts on which he relies could not be performed within one year. Counts One and Two are, therefore, unenforceable under the statute of frauds and should be dismissed with prejudice.

    C.    Count Three lacks the specificity required by Rule 9(b), and cannot overcome a fatal defect as to intent.

A complaint purporting to state a claim of fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). It must allege "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Mosiman*, 2019 U.S. Dist. LEXIS 7496, 2019 WL 203126, at *8 (citing *OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 U.S. Dist. LEXIS 166206, 2018 WL 4658211, at *2 (D. Del. Sept. 27, 2018) (quoting *In re Sony*, 758 F. Supp. 2d 1077, 1087 (S.D. Cal. 2010)); *Gerbitz v. ING Bank, FSB*, 967 F. Supp. 2d 1072, 1078 (D. Del. 2013) ("identifying 'the who, what, where, when, how, and why' of fraud claims required by Rule 9(b)")); *Cavi v. Evolving Sys., Inc.*, 2017 U.S. Dist. LEXIS 22902, at *21 (D. Del. Feb. 17, 2017), *adopted in relevant part*, 245 F. Supp. 3d 604 (D. Del. 2017) ("To satisfy Rule 9(b), a complaint must allege: i) the time, the place, and contents of the false representation; ii) the identity of the person making the representation; and iii)

what the person intended to gain by making the representations.") (citation omitted).

While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," a fraud plaintiff may not ignore either Rule 8(a) or the first sentence of Rule 9(b). In *Iqbal*, for instance, the Supreme Court rejected as conclusory the respondent's allegation that the petitioners had "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" 556 U.S. at 686. "Were we required to accept this allegation as true," the court said, "respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id*. Thus,

> "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. ***Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.*** It does not give him license to evade the less rigid – though still operative –strictures of Rule 8.

*Id*. at 686-87 (citations omitted) (emphasis added). "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id*. at 687.

Yet that is what Emerson has done with Count Three, which fails to provide the particularity required by Rule 9(b). While the Complaint claims that

11

"Defendants" promised Emerson "that his compensation package would include what they hoped would be valuable MPCL stock options," Compl. at ¶ 8, it does not specify who allegedly made this promise on behalf of "Defendants," whether the promise was made on behalf of one, some, or all of the "Defendants," when this promise was made, how (i.e., in what manner) this promise was made, how Emerson knows that the promise was made on behalf of "Defendants," only one of which (the one with which Emerson had no employment relationship) issues stock, *id*. at ¶¶ 5-6, or what the alleged communicator(s) hoped to gain by an alleged falsehood.

Moreover, in order to be actionable fraud, a statement must have been made with fraudulent intent at the time. *See, e.g., Cavi*, 2017 U.S. Dist. LEXIS 22902, at *20 (citing *Addy v. Piedmonte*, 2009 Del. Ch. LEXIS 38, at *61 (2009)) (stating elements of fraud). If the allegation of intent in *Iqbal* was conclusory and therefore not to be credited, *see* 556 U.S. at 686, Emerson's allegation of intent should also be rejected. In fact, Iqbal's inadequate allegation – that the petitioners "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest'" – is more specific than Emerson's boilerplate charge that "[t]he intentional and/or negligent misrepresentations made by said Defendants were willful, wanton, malicious and/or in reckless disregard of Emerson's rights." Compl. at ¶ 50.

Emerson may argue that these defects are curable by amendment. The intent allegation underlying Count Three suffers, however, from a plausibility issue that he cannot cure consistent with Rule 11. Emerson alleges that he was promised stock options before his employment; and that, after his employment began, he got a stock-option agreement. Compl. at ¶¶ 12-13. This is inconsistent with a fraudulent intent. The relationship apparently progressed trouble-free. There is at least no allegation of difficulty until at least late 2019. In fact, in or after October 2019, two years into the relationship, "Defendants assisted" Emerson with regard to opening an account at NH Investment & Securities Co., Ltd., "for th[e] purpose" of exercising his alleged options. *Id*. at ¶¶ 18-19. This too is inconsistent with a fraudulent intent. Emerson alleges that it was only later that "Defendants" grew "upset" that he wanted to exercise options. *Id*. at ¶ 20. Where the parties went through two years of amicable relations, during which the Defendants provided a stock-option agreement and then "assisted" Emerson in exercising the alleged right at issue, it is implausible to allege that, at the beginning of the relationship, these same Defendants harbored a fraudulent intent, an intent to never award Emerson stock options. This is not a problem that amendment can cure. The Court should, therefore, dismiss Count Three with prejudice.

## IV. Conclusion

Each count of the Complaint suffers from a fatal defect. Counts One and Two are barred by the statute of frauds. Count Three, which fails to allege any of the particulars necessary to pursue a fraud claim, also suffers from an implausible allegation of fraudulent intent that cannot be cured by amendment. Accordingly, Mezzion Pharmaceuticals asks that the Court grant its Motion to Dismiss the Complaint with prejudice.

By: <u>*/s/ Francis G.X. Pileggi*</u>
Francis G.X. Pileggi (No. 2624)
Andrew Gendron*
LEWIS BRISBOIS BISGAARD & SMITH, LLP
LEWIS BRISBOIS BISGAARD
500 Delaware Avenue, 7th Floor
& SMITH, LLP
Wilmington, DE 19801
100 Light Street, Suite 1300
Phone: (302) 985-6002
Baltimore, MD 21202
Francis.Pileggi@LewisBrisbois.com
Phone: (410) 525-6414
Andrew.Gendron@LewisBrisbois.com

*Motion for admission *pro hac vice* pending

*Attorneys for Defendant Mezzion Pharmaceuticals, Inc.*

Words: 3,140

Dated: July 31, 2020