IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ERIK EMERSON,

        *Plaintiff*,

   v.

MEZZION INTERNATIONAL,
LLC, ET AL.,

        *Defendants*.

No. 1:20-cv-808-SB

---

Carmella P. Keener, COOCH & TAYLOR, P.A., Wilmington, Delaware; Steven I. Adler, Brian M. Block, MANDELBAUM SALSBURG, P.C., Roseland, New Jersey.

        *Counsel for Plaintiff.*

Francis G.X. Pileggi, Cheneise V. Wright, LEWIS BRISBOIS BISGAARD & SMITH, Wilmington, Delaware; Andrew Gendron, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Baltimore, Maryland.

        *Counsel for Defendants.*

---

## MEMORANDUM OPINION

February 26, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Erik Emerson, a pharmaceutical executive, sued his employer and its parent company for not letting him exercise his stock options. But his claims against his employer fail. And he still has not served the parent company.

## I. BACKGROUND

Mezzion Pharma Co., a Korean company, makes drugs for pediatric diseases. Its U.S. subsidiary, now Mezzion Pharmaceuticals Inc., hired Erik Emerson as a Vice President. Compl. ¶4, D.I. 1; Def.'s Br. 1 n.1, D.I. 8.

Emerson signed an employment agreement with the subsidiary. Compl. ¶4. The next month, the companies offered Emerson a stock option. *Id.* ¶12. The parent company could revoke that option by a resolution of its board, but only for good cause. *Id.* ¶13. Later, the companies offered Emerson two more stock options. *Id.* ¶14. Emerson could exercise these options anywhere from two to eight years after he got them, as long as he was not fired for good cause. *Id.* ¶¶13, 16; Compl. Ex. B art. 3 ¶2, D.I. 1-1.

Two years later, Emerson told the companies that he wanted to exercise his first option. Compl. ¶17. At first, they helped him set up an account to transfer his stock. *Id.* ¶18. But then the subsidiary fired him, allegedly not for good cause but *because* he wanted the stock. *Id.* ¶20. Notably, the board never revoked Emerson's options. S*ee id.* ¶24. After his firing, Emerson told the companies that he also wanted to exercise his other two options. *Id.* ¶21. He even sent them $67,500 for his first option. *Id.* ¶31. Still, the parent never transferred the stock. *Id.* ¶34.

So Emerson sued. He blames the companies for breaching the option and employment contracts by currently refusing to sell him the stock. Compl. ¶¶36–40. He accuses them of planning to continue to breach the option contracts until his options expire. *Id.* ¶43. And he says that they tricked him into working for them by promising him stock with no intent to give it to him. *Id.* ¶¶46–47. The subsidiary moved to dismiss Emerson's complaint as to it. Reply Br. 2, D.I. 12.

### II. EMERSON HAS NOT MADE OUT CONTRACT CLAIMS AGAINST THE SUBSIDIARY

Emerson sued both companies for breach of the option contracts. Compl. ¶¶36–37, 40. But, as Emerson now admits, he entered those contracts with the parent; the subsidiary "is not a party" to them. Pl.'s Br. 7, D.I. 11. And "a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). So Emerson has no breach-of-the-option-contracts claim against the subsidiary. Similarly, Emerson has not stated an anticipatory-breach-of-contract claim against the subsidiary. To plan to breach the option contracts, the subsidiary had to be a party to those contracts. *See* Restatement (Second) of Contracts § 253 (Am. L. Inst. 1981). Since Emerson's option-contract claims are properly against the parent, I will dismiss those claims against the subsidiary with prejudice.

Emerson also suggests in passing that the subsidiary breached his employment contract. Compl. ¶40. He did sign an employment contract with the subsidiary. Compl. ¶9; Compl. Ex. A, D.I. 1-1; Pl.'s Br. 1, D.I. 11. But he does not explain *how* the subsidiary breached it or provide a single fact in support. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That means he has not stated a breach-of-employment-contract claim either. I dismiss this claim without prejudice.

### III. EMERSON DID NOT PLEAD HIS FRAUD CLAIM WITH PARTICULARITY

Emerson's fraud claim fails too. He accuses the subsidiary of promising him stock options to lure him into an employment contract without any intent of giving him that stock. Compl. ¶¶46–47. But he adds no "particularity" to this claim. Fed. R. Civ. P. 9(b). He does not identify who promised him stock options, when, or where. Compl. ¶8; *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Nor does he "otherwise inject precision or some measure of substantiation into" his claim. *Id.* So I must dismiss his sparse fraud claim. Since he could add facts to bolster it, I will do so without prejudice.

### IV. EMERSON MUST SERVE THE PARENT COMPANY PROMPTLY

The parent company did not file a motion to dismiss of its own. Apparently, it still has not been served. Emerson filed his complaint last June. *See* D.I. 1. In August, he represented that the delay in service was due to his "efforts to fully comply with" the Hague Convention. Pl.'s Br. 5. It is now February. Emerson has provided no explanation for this delay.

Without service, Emerson's claims against the parent cannot proceed. The Hague Convention forbids me from entering a judgment against the parent unless Emerson serves it "in sufficient time to enable [it] to defend" itself in this suit. Hague Conv. Serv. Abroad art. 15 (1965). Plus, I can dismiss actions for failure to prosecute. Fed. R. Civ. P. 41(b); *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994). So I encourage Emerson to serve the parent company within the next thirty days.

\* \* \* \* \*

Emerson has not stated a breach-of-contract or anticipatory-breach-of-contract claim against the subsidiary. And he does not add any specifics to his fraud claim. So I will dismiss all three. For now, the parent company remains in this suit.