IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ERIK EMERSON,

    *Plaintiff*,

  v.

MEZZION INTERNATIONAL, LLC, ET AL.,

    *Defendants*.

No. 1:20-cv-808-SB

---

Carmella P. Keener, COOCH & TAYLOR, P.A., Wilmington, Delaware; Steven I. Adler, Brian M. Block, MANDELBAUM SALSBURG, P.C., Roseland, New Jersey.

*Counsel for Plaintiff.*

Francis G.X. Pileggi, Cheneise V. Wright, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Wilmington, Delaware; Andrew Gendron, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Baltimore, Maryland.

*Counsel for Defendants.*

---

**MEMORANDUM OPINION**

September 30, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Erik Emerson, a pharmaceutical executive, sued his former employer for not letting him exercise stock options. I dismissed his initial claims but let him amend his complaint. Yet his second attempt fares no better than his first. He never explains how his employer breached his contract and he does not plead fraud specifically enough. So I will dismiss his claims with prejudice.

## I. BACKGROUND

Dean Park, the CEO of a Korean drug company, recruited Emerson to work for the company's Delaware subsidiary, now Mezzion Pharmaceuticals, Inc. D.I. 18 ¶¶ 9–11. To sweeten the deal, Park promised Emerson the option to buy stock in the Korean parent company. Persuaded, Emerson signed an employment contract with the subsidiary. *Id.* ¶¶ 10–12, Ex. A.

As promised, the parent company signed a separate stock-option contract with Emerson a month later. *Id.* ¶ 18. It also granted him additional options in 2018 and 2019. *Id.* ¶ 22. These could be revoked by the parent's board if Emerson left the company voluntarily or was fired for cause. *Id.* ¶ 19, Ex. D, art. 7.

Two years after he started work, Emerson chose to exercise his first option. *Id.* ¶ 32. This, Emerson says, upset Park, who "feels that employees who try to exercise their options are 'betraying' him." *Id.* ¶ 59. To prevent Emerson from buying his shares, Park fired him. *Id.* ¶ 33. While the parent's board has not revoked Emerson's options, it has yet to transfer his shares. *Id.* ¶¶ 60–62. Nor has it responded to his later attempts to exercise his second and third options. *Id.* ¶ 82. This cost Emerson

millions of dollars. *Id.* So he sued both companies, alleging breach of contract and fraud. He says they duped him by promising illusory options.

But Emerson's first effort to state a claim failed. Mem. Op., D.I. 15. To start, he failed to join the Korean parent as a defendant. So I dismissed his breach-of-options-contract claim because the subsidiary, the only defendant before me, was not a party to that contract and so could not have breached it. I dismissed his breach-of-employment-contract claim because he did not explain *how* the subsidiary breached the contract. And I dismissed his fraud claim because he did not plead it with particularity. But I gave Emerson another chance to add facts to bolster his case. *Id.*

In response, he amended his complaint. He now argues that the subsidiary orally amended his employment contract, committing to give him the options. He also adds a few facts to his anemic fraud claims. But these efforts fail, so I now dismiss his claims with prejudice.

## II. EMERSON'S BREACH-OF-CONTRACT CLAIMS FAIL

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To decide whether Emerson's claims are plausible, I "consider not only [his] complaint, but also the exhibits … attached to it," including his employment and options contracts. *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018).

Emerson claims that the subsidiary breached his employment contract when it failed to sell him the stock. D.I. 18 ¶¶ 63−77. He acknowledges that the contract does

3

not mention stock options. Instead, he argues that the parties orally agreed to amend the contract to guarantee the options. *Id.* ¶ 69. And he says the subsidiary breached that amended contract when they fired him. *Id.* ¶ 71.

While Delaware lets parties amend written contracts orally, Emerson must plead specific facts "leav[ing] no doubt" that the parties intended to change their agreement. *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1230 (Del. Ch. 2000) (internal quotation marks omitted). This is a high bar to clear. *Id.*

Here, Emerson's complaint falls short. True, he alleges that he discussed the options contracts with the subsidiary. For instance, he says that after he signed the employment contract, two executives promised him options in the parent. D.I. 18 ¶ 15. Emerson also claims that Park said he would "take care" of him if he kept working hard. *Id.* ¶ 21. But these assurances, even if true, are vague. Emerson does not plead facts showing "an[] unambiguous and specific discussion of a modification." *Cont'l Ins. Co.*, 750 A.2d at 1231. So his claims fail.

Plus, even if the parties did agree to amend their contract, Emerson got what he was promised. He *was* offered options on three different occasions. D.I. 18 ¶ 17, 22. And his employment contract did not require any cause for firing. Indeed, it contemplated that his employment would "continu[e] until terminated by either party." *Id.* Ex. A ¶ 1. So even if I overlook the lack of detail in his complaint, Emerson still does not explain how the subsidiary breached the employment contract. After all, the parent offered him options, and no one ever promised him that he would not be fired.

4

### III. EMERSON FAILS TO PLEAD FRAUD SPECIFICALLY ENOUGH

Emerson accuses the subsidiary of promising him options with no intent of letting him exercise them. I dismissed this claim once because Emerson failed to "identify who promised him … [the] options, when, or where." D.I. 15, at 4. His amended complaint adds more detail, but still not enough. So I will dismiss his fraud claims with prejudice.

Before reaching the merits, Emerson raises a threshold issue. He argues that I should not dismiss his fraud claims because it is unclear which substantive law applies. D.I. 25, at 12. This argument is a red herring. I need not analyze choice of law unless there is a "true conflict." *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). That is, "where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Id*.

Here, Emerson raises just such a false conflict. He contends that I should not dismiss his claims because the laws of several states or even Korea could apply. D.I. 25, at 12. But even if there is a choice-of law-issue, the Federal Rules of Civil Procedure apply in federal court. So Emerson must meet the heightened 9(b) pleading standard. Because he falls short of this high bar, I need not decide which substantive law applies.

To meet the 9(b) standard, Emerson "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). He must "inject[] precision … into [his] allegations" by providing "the date, place or time of the fraud," and by stating

5

"who made [the] misrepresentation to whom and [its] general content." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (internal quotation marks omitted). And because Emerson claims that he was misled by a false promise, he must "plead specific facts that … [show] the promisor had no intention of performing at the time the promise was made." *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VPC, 2008 WL 5352063, at *10 (Del. Ch. 2008).

Emerson fails to do this. He alleges that "in or about mid-2017," Park induced him to work for the subsidiary by promising stock options, and that he signed the employment contract in reliance on this promise. D.I. 18 ¶¶ 91−93. But he does not adequately plead that Park had no intention of letting him exercise his options when the promise was made.

Instead of providing facts, he states a conclusion: "At the time of making the various representations, Park knew that he would block any attempt by Emerson … to exercise [his] options." *Id.* ¶ 96. Yet the facts that Emerson offers undercut this conclusion. Park did repeatedly secure options contracts for Emerson. *Id.* ¶ 92. And when Emerson first decided to exercise his options contract, the subsidiary and the parent *helped* him set up a brokerage account to receive the stock. *Id.* ¶ 31. None of this suggests that Park had decided to prevent Emerson exercising his options at the outset. Indeed, Emerson's complaint suggests that Park decided to fire him because he was too opinionated. *Id.* ¶ 36.

\* \* \* \* \*

If the facts he alleges are true, Emerson was mistreated by the Korean parent. He has a good claim that it breached the options contract when it failed to give him the stock. But the parent is not a party to this case. And Emerson cannot get around this defect by bringing inapt claims against the subsidiary. So I will dismiss his claims with prejudice.